1  Ani Nazaryan (CA SB No. 351886)
2  KERKONIAN DAJANI, LLP
   15915 Ventura Blvd., Ste. 203
3  Encino, California 91436
4  Tel: (312) 416-6180
   anazaryan@kerkoniandajani.com
5

6  Timothy P. Kingsbury (SB No. 6329936)
   (*pro hac vice forthcoming*)
7  KINGSBURY LAW LLC
8  8 S. Michigan Ave., Ste. 2600
   Chicago, Illinois 60603
9  Tel: (312) 291-1960
10 tim@kingsburylawllc.com

11 *Counsel for Plaintiff and the Putative Class*

12

13        **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
14

15 GUILLERMO MATA, individually          ) Case No. **'24 CV 1094 L      DEB**
   and on behalf of similarly situated   )
16 individuals,                          )
                                         ) Hon.
17                                       )
                                         )
18              Plaintiff,               ) Date:
                                         ) Time:
19       v.                              )
                                         )
20                                       ) **CLASS ACTION COMPLAINT**
   REDFIN CORPORATION, a                 )
21 Delaware corporation,                 )
                                         ) **1. Video Privacy Protection Act,**
22                                       )    **18 U.S.C. § 2710 *et seq.***
                                         )
23              Defendant.               )
                                         ) **2. California Invasion of Privacy**
24                                       )    **Act, Cal. Penal Code § 630 *et***
                                         )    ***seq.***
25                                       )
                                         )
26 _____) DEMAND FOR JURY TRIAL
27

28
   CLASS ACTION COMPLAINT          1                        No.

1  Plaintiff Guillermo Mata brings this Class Action Complaint against
2  Defendant Redfin Corporation ("Defendant"), on his own behalf and on behalf of
3  other subscribers to Defendant's online real estate brokerage, to obtain relief for
4  Defendant's knowing disclosure of their personally identifiable information
5  ("PII") and prerecorded video viewing activity to third parties in violation of the
6  Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, as well as the
7  California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*
8  ("CIPA"). Specifically, Defendant uses third-party code to track prerecorded
9  videos its subscribers watch and sends that data to its third-party code vendors
10 along with subscribers' PII, all without its subscribers' valid consent. Plaintiff
11 alleges as follows based on Plaintiff's own personal knowledge, acts, and
12 experiences, and as to all other matters, on information and belief, including an
13 investigation by his attorneys.

14  **NATURE OF THE CASE**

15  1.  Defendant owns and operates one of the largest online real estate
16 brokerages in the nation. As such, a key element of Defendant's business model
17 is to showcase for-sale residential properties on its website, redfin.com, using
18 photographic and video content.

19  2.  For instance, Defendant offers "video tours" of many properties.
20 These tours consist of prerecorded video productions with an accompanying
21 audio track:[1]

22
23
24
25
26 _____

27 [1] https://www.redfin.com/CA/San-Diego/2742-Kobe-Dr-92123/home/5214663
28 (last visited June 24, 2024).

CLASS ACTION COMPLAINT            2            No.

3.  In addition, Defendant has knowingly installed pixels and other tracking technologies developed by third party advertisers. These tracking technologies capture the PII of Defendant's subscribers relating to specific videos that the subscribers have viewed and disclose such PII to the third-party developers, all without the subscribers' informed, written consent.

4.  The VPPA prohibits entities engaged in the business of delivering prerecorded audio visual materials, such as Defendant, from "knowingly disclos[ing]" consumers' PII absent the consumer's written consent, where PII is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710.

5.  In direct contravention of the protections afforded by the VPPA, Defendant discloses to third-party companies its consumers' PII without first obtaining their written consent. Accordingly, Plaintiff brings this action on behalf of himself and other of Defendant's registered users whose PII Defendant unlawfully disclosed.

CLASS ACTION COMPLAINT                3                        NO.

6.     Further, Defendant's sharing of Plaintiff's and other California subscribers' PII without consent constitutes violations of CIPA.

7.     Plaintiff seeks an order enjoining Defendant from further unauthorized disclosure of consumers' PII, awarding damages consistent with the VPPA and CIPA, and awarding reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d).

9.     This Court may assert personal jurisdiction over Defendant because Plaintiff's cause of action arises out of Defendant's contacts with the state of California. Defendant has purposefully availed itself of the California marketplace and knowingly placed thousands of California residential properties on its online brokerage in an effort to transact business with California residents.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

11.    Plaintiff Guillermo Mata is a natural person and a resident of the County of San Diego, California.

12.    Defendant Redfin Corporation is a Delaware corporation headquartered in Seattle, Washington.

## COMMON FACTUAL ALLEGATIONS

13.    The genesis of the VPPA was President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store shared Judge Bork's rental history with the Washington City Paper, which then published it. Congress responded by passing

the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who sponsored the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

14.    At a more recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other newtechnologies have revolutionized the availability of Americans' information."[2]

15.    The VPPA generally prohibits the knowing disclosure of information which identifies a consumer as having requested or obtained specific video materials or services. 18 U.S.C. § 2710(b)(1).

16.    Defendant owns and operates an online residential real estate brokerage through its website, redfin.com, and mobile application.

---

[2] See Statement of the Honorable Patrick Leahy, United States Senator, January 31, 2012, https://www.judiciary.senate.gov/imo/media/doc/leahy_statement_01_31_12.pdf (last visited June 24, 2024).

17. Defendant attempts to distinguish itself from competitors in the residential real estate market by offering consumers "the best agents powered by the best technology."[3]

18. One of the particular technology offerings which Defendant highlights is its guided video tours of real estate listings, promising prospective listing agents that "Homebuyers love watching guided video tours because they can get a more detailed look at a house from the comfort of their couch. Your sellers will love this option because they can capture buyers' attention, while limiting unnecessary foot traffic."[4]

19. As their name suggests, Defendant's guided video tours consist of a video presentation of a given property accompanied by an audio soundtrack:[5]

---

[3] https://www.redfin.com/why-redfin (last visited June 24, 2024).
[4] https://www.redfin.com/news/real-estate-agents-post-virtual-tours-to-redfin/ (last visited June 24, 2024).
[5] *See* https://www.redfin.com/CA/Los-Angeles/3459-Carmona-Ave-90016/home/6890227 (last visited June 24, 2024); https://www.redfin.com/CA/El-Cajon/1105-Mary-St 92021/home/5598113 (last visited June 24, 2024).

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27



28

CLASS ACTION COMPLAINT                    7                        NO.

20. In addition to such guided video tours, Defendant has also knowingly deployed third-party tracking pixels and other third-party tracking technologies on its Redfin.com webpages. Such tracking technology sends site user activity records to third parties including Reddit, Inc., Meta Platforms, Inc. ("Meta"), Microsoft Corporation, Alphabet, Inc. (Google), Oracle Corporation, and Snap, Inc. (Snapchat).

21. Defendant programmed such third-party tracking technology into its website for advertising purposes and to increase its profits. Defendant knew that such tracking technology would transmit site visitors' activity, including records of which video tours they have watched, as the entire purpose of implementing such technology is so that Defendant can target advertisements or send marketing emails through the technology's third-party providers.

22. Defendant permits redfin.com users to subscribe and create a "My Redfin" profile by registering their first name, last name, and email with Defendant. Creating a profile permits subscribers to save their real estate searches and easily access Redfin site materials they previously viewed, including video content.

23. When a registered user accesses one of Defendant's guided video tours, Defendant, through the third-party tracking technologies Defendant knowingly incorporated into its webpages, discloses such subscribers' PII, including names, emails, and/or IDs associated with Defendant's third-party technology vendors, along with records of the video content the registered user accessed, to its third-party tracking vendors.

24. For example, when a subscriber who is a Facebook user views a video on Defendant's website, Meta's "Meta Pixel," a tracking technology programmed into Defendant's website code, transmits that information to Facebook along with the subscriber's Facebook ID. The Facebook ID is a unique identifier assigned to

each Facebook user. Typing www.facebook.com/[subscriber's Facebook ID] into a web browser permits anyone to find that subscriber's Facebook account. A Facebook account generally contains a wide range of demographic information about a Facebook user.

25. At no time, however, does Defendant inform its subscribers that records of their viewing activity and PII will be shared with such third parties "in a form distinct and separate from any form setting forth other legal or financial obligations" of the subscriber, as VPPA requires. Nor does Defendant seek or obtain subscribers' informed, written consent to those disclosures.

26. Indeed, in recent filings with the Security Exchange Commission, Defendant itself has acknowledged its potential liability for its use of pixel and other subscriber-tracking technology: "We use evolving tools and technology, such as pixels, in the operation of our websites. We are from time to time involved in, and may in the future be subject to, enforcement actions and private third-party claims arising from the laws to which we are subject. This includes third party claims relying on older legislation as the basis for allegations of consumer data privacy violations against companies using new technology . . . Our use of such technology could subject us to expensive litigation, and to greater loss exposure due to insurance limits."[6]

## PLAINTIFF'S EXPERIENCE

27. At all relevant times, Plaintiff has been one of Defendant's subscribers after registering his first name, last name, and email with Defendant in order to create a "My Redfin" profile.

---

[6] Redfin Corporation 2023 Form 10-K, available at https://investors.redfin.com/financial-information/sec-filings/content/0001382821-24-000027/0001382821-24-000027.pdf, at 12 (last visited June 24, 2024).

CLASS ACTION COMPLAINT                    9                         No.

28. At all relevant times, Plaintiff has been a Facebook user.

29. While he was one of Defendant's subscribers, Plaintiff requested many of Defendant's prerecorded "guided video tours" of real estate properties, and viewed such video tours.

30. Whenever Plaintiff requested or obtained such prerecorded videos on Defendant's website, Defendant disclosed to third-party tracking vendors, including Meta, records of which specific videos Plaintiff requested as well as Plaintiff's PII in the form of his name, email address (which includes his last name), and Facebook ID.

31. In fact, Plaintiff's Facebook profile shows that Defendant has shared information with Facebook concerning Plaintiff's Redfin site activity, which includes specific records of the content Plaintiff viewed,[7] on over 400 occassions:

---

[7] *Review your activity off Meta technologies*, FACEBOOK, https://www.facebook.com/help/2207256696182627 (interactions include "Viewing content" and "Searching for an item") (last visited June 24, 2024).

1
2
3
4
5
6
7
8
9
10
11
12
13



14    32.    Plaintiff has never given his informed consent, written or otherwise,

15 to Defendant to disclose such information to third parties.

16                          **CLASS ACTION ALLEGATIONS**

17    33.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of

18 himself, on behalf of a nationwide Class, and on behalf of a statewide Subclass,

19 defined as follows:

20    a)    The Class: All persons in the United States with a My Redfin account

21         and who requested or viewed a guided video tour on or through Redfin.com

22         during the applicable limitations period.

23    b)    The California Subclass: All persons in California with a My Redfin

24         account and who requested or viewed a guided video tour on or through

25         Redfin.com during the applicable limitations period.

26
27
28

34.    Subject to additional information obtained through further investigation and discovery, the above-described Class and California Subclass may be modified or narrowed as appropriate.

35.    **Numerosity**. Upon information and belief, there are thousands of members of both the Class and Subclass such that joinder of all members is impracticable.

36.    **Typicality**. Plaintiff's claims are typical of the Class he seeks to represent. Plaintiff, like all Class members, had his PII knowingly disclosed by Defendant to third parties without his informed written consent. Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of any absent class member.

37.    **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class and Subclass.

38.    **Commonality and Predominance**. Numerous common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a.    Whether Defendant knowingly disclosed Class members' personal video viewing information to third parties;

    b.    Whether Defendant knowingly disclosed Class members' personally-identifiable information to third parties;

1       c.      Whether Class members are entitled to damages and equitable relief

2               as a result of Defendant's conduct.

3       39.   **Superiority**. Absent a class action, most members of the Class would

4 find the cost of litigating their claims to be prohibitive and would have no effective

5 remedy.  The class treatment of common questions of law and fact is also superior

6 to multiple individual actions or piecemeal litigation in that it conserves the

7 resources of the courts and the litigants, and promotes consistency and efficiency

8 of adjudication.

9               **FRAUDULENT CONCEALMENT AND TOLLING**

10      40.   The applicable statutes of limitations are tolled by virtue of

11 Defendant's knowing and active concealment of the facts alleged above. Plaintiff

12 and Class members were ignorant of the information essential to the pursuit of

13 these claims, without any fault or lack of diligence on their own part.

14      41.   At the time the action was filed, Defendant was under a duty to

15 disclose the true character, quality, and nature of its activities to Plaintiff and the

16 Class. Defendant is therefore estopped from relying on any statute of limitations.

17      42.   Defendant's fraudulent concealment is common to the Class.

18                    **CAUSES OF ACTION**

19                        **Count I**

20   **Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710**

21               **(On behalf of Plaintiff and the Class)**

22      43.   Plaintiff incorporates by reference all of the foregoing allegations as

23 if fully set forth herein.

24      44.   The VPPA prohibits a "video tape service provider" from knowingly

25 disclosing "personally-identifying information" concerning any consumer to a

26 third-party without the "informed, written consent (including through an electronic

27 means using the Internet) of the consumer." 18 U.S.C. § 2710(b)(1).

28

CLASS ACTION COMPLAINT         13                  No.

1    45.    A "video tape service provider" is "any person, engaged in the
2  business, in or affecting interstate commerce, of rental, sale, or delivery of
3  prerecorded video cassette tapes or similar audiovisual materials." Id. § 2710(a)(4).
4  Defendant is a "video tape service provider" because it is engaged in the business
5  of delivering prerecorded audiovisual materials that are similar to prerecorded
6  video cassette tapes and those sales affect interstate or foreign commerce.

7    46.    As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any
8  renter, purchaser, or subscriber of goods or services from a video tape service
9  provider." As alleged above, Plaintiff and the Class members are subscribers to
10  Defendant's services, including its services involving the provision of prerecorded
11  video content. Thus, Plaintiff and the Class members are "consumers" under this
12  definition.

13    47.    As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable
14  information' includes information which identifies a person as having requested or
15  obtained specific video materials or services from a video tape service provider."

16    48.    Defendant knowingly disclosed Plaintiff's and the Class members'
17  PII, including their names, email addresses, and Facebook or other social
18  networking IDs, to its third-party tracking vendors.

19    49.    This information constitutes personally identifiable information under
20  18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to
21  Defendant's third-party vendors as an individual who requested or obtained
22  Defendant's video content, including the specific video materials requested or
23  obtained on Defendant's Redfin website.

24    50.    Under the VPPA, "informed, written consent" must be (1) in a form
25  distinct and separate from any form setting forth other legal or financial obligations
26  of the consumer; and (2) at the election of the consumer, is either given at the time
27  the disclosure is sought or given in advance for a set period of time not to exceed

28

CLASS ACTION COMPLAINT                    14                              NO.

1   two years or until consent is withdrawn by the consumer, whichever is sooner."*Id.*

2   § 2710(b)(2)(B). Defendant failed to obtain informed, written consent from

3   Plaintiff and the Class members under this definition.

4        51.    In addition, the VPPA creates an opt-out right for consumers. *Id*. §

5   2710(2)(B)(iii). It requires video tape service providers like Defendant to also

6   "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or

7   to withdraw from ongoing disclosures, at the consumer's election." *Id*. Defendant

8   failed to provide an adequate opportunity to opt out as required by the VPPA.

9        52.    Defendant knowingly disclosed Plaintiff's and the Class members'

10  personal viewing information to its third-party tracking vendors. Defendant

11  programmed its third-party vendors' tracking technology into its website code,

12  knowing that those third parties would receive records of which videos a subscriber

13  requested and the subscriber's PII.

14       53.    By disclosing Plaintiffs' and the Class's personal viewing

15  information, Defendant violated Plaintiff's and the Class members' statutorily

16  protected right to privacy in their video-watching habits.

17       54.    As a result of the above violations, Defendant is liable to Plaintiff and

18  the other Class members for actual damages in an amount to be determined at trial

19  or, alternatively, for "liquidated damages" "not less than $2,500" per violation. *Id*.

20  § 2710(c)(2). Under the statute, Defendant is also liable for reasonable attorney's

21  fees, and other litigation costs, injunctive and declaratory relief, and punitive

22  damages in an amount to be determined by a jury, but sufficient to prevent the same

23  or similar conduct by Defendant in the future. *Id*.

24  

**Count II**

25  **Violations of the California Invasion of Privacy Act, Cal. Penal Code §631(a)**

26  **(On behalf of Plaintiff and the California Subclass)**

27

28

CLASS ACTION COMPLAINT              15                       No.

55.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

56.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*

1    Aids, agrees with, employs, or conspires with any person or persons

2    to unlawfully do, or permit, or cause to be done any of the acts or

3    things mentioned above in this section.

4    57.    § 631(a) is not limited to phone lines, but also applies to "new

5    technologies" such as computers, the Internet, and email. *See Javier v. Assurance*

6    *IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in

7    terms of wiretapping, Section 631(a) applies to Internet communications.").

8    58.    The third-party tracking technologies Defendant programmed into its

9    website are each a "machine, instrument, contrivance, or … other manner" used to

10   read or learn the contents or meaning of messages, reports, or communications

11   between Plaintiff and the Subclass members and Defendant.

12   59.    Defendant's third-party tracking vendors were third parties to

13   communications between Plaintiff and the Subclass members and Defendant.

14   60.    At all relevant times, Defendant's third-party tracking vendors

15   willfully and without the consent of all parties to the communication, or in any

16   unauthorized manner, read, attempted to read, and/or learned the contents or

17   meaning of electronic communications between Plaintiff and the Subclass

18   members, on the one hand, and Defendant, on the other, while the electronic

19   communications were in transit or were being sent from or received at a place

20   within California.

21   61.    At all relevant times, Defendant aided, agreed with, employed,

22   permitted, or otherwise enabled its third-party tracking vendors to wiretap Plaintiff

23   and the Subclass members using their third-party tracking technologies. Defendant

24   knew that the third-party tracking technology it installed on its website would result

25   in the disclosure of user communications to third parties, as increasing its

26   advertising presence on other platforms was one of Defendant's purposes for

27   implementing such technology.

28

CLASS ACTION COMPLAINT                    17                    NO.

1    62.    Plaintiff and the Subclass members did not provide their prior consent to such third parties' access, interception, reading, learning, recording, collection, and usage of their electronic communications. Nor did Plaintiff and the Subclass members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling its third-party vendors' conduct.

63.    The wiretapping of Plaintiff and the Subclass members occurred in California, where Plaintiff and the Subclass members accessed Defendant's Redfin website.

64.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Subclass members have been injured by Defendant's violations of § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of § 631(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class and California Subclass, respectfully prays for the following relief:

    a.    An order certifying the Class and Subclass as defined above;

    b.    An order declaring that Defendant's conduct violates the VPPA and CIPA;

    c.    An award of statutory damages under the VPPA to the Class and under the CIPA to the California subclass;

    d.    For punitive damages, as warranted, in an amount to be determined at trial;

    e.    For prejudgment interest on all amounts awarded;

    f.    For injunctive relief enjoining Defendant's ongoing misconduct, as the Court deems appropriate; and

    g.    For any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

65.    Plaintiff demands a trial by jury for all issues so triable.

1

2   Dated: June 25, 2024

3

4

Respectfully submitted,

GUILLERMO MATA, individually and on
behalf of similarly situated individuals

5   By: /s/ Ani Nazaryan

6

7

8

9

10

Ani Nazaryan (CA SB No. 351886)
KERKONIAN DAJANI, LLP
Ventura Blvd., Ste. 203
Encino, California 91436
Tel: (312) 416-6180
anazaryan@kerkoniandajani.com

11

12

13

14

15

16

Timothy P. Kingsbury
(IL ARDC No. 6329936)
(*pro hac vice forthcoming*)
KINGSBURY LAW LLC
8 S. Michigan Ave., Ste. 2600
Chicago, Illinois 60603
Tel: (312) 291-1960
tim@kingsburylawllc.com

17

18

19

*Counsel for Plaintiff and the
Putative Class and Subclass*

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                    19                              NO.